Case 1:13-cv-02638-LLS   Document 33   Filed 11/19/13   Page 1 of 13

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/19/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
C&L INTERNATIONAL TRADING INC., KAM NG,
And K&C INTERNATIONAL TRADING INC.

                    Plaintiffs,      13 Civ. 2638 (LLS)
                                 13 Civ. 2763 (LLS)
     - against -

                                OPINION AND ORDER

AMERICAN TIBETAN HEALTH INSTITUTE, INC.,
CHUNG KEE (USA) INTERNATIONAL INC., YAT
CHAU (USA) INC., TUNG REN TANG, RON FENG
TRADING INC., FARGO TRADING INC., YONG LONG
SUPERMARKET INC., and PO WING HONG FOOD
MARKET INC.,

                    Defendants.

----------------------------------------X
AMERICAN TIBETAN HEALTH INSTITUTE, INC.,

                    Plaintiffs,

     - against -

KAM NG, C&L INTERNATIONAL TRADING, INC.,
KANG LI TRADING, INC., and K&C
INTERNATIONAL TRADING, INC.,

                    Defendants.

----------------------------------------X

     These cases are cross-suits arising out of a trademark dispute over two products called "Tibetan Baicao Tea." Both C&L International Trading Inc. ("C&L") and American Tibetan Health Institute, Inc. ("ATHI") manufacture and sell tea called "Tibetan Baicao Tea," in similar packaging. ATHI and C&L each claims to own registered trademarks for the name "Tibetan Baicao

1

Tea" and its packaging and logos, and each brings suit alleging trademark infringement against the other party, among other claims.

ATHI and its co-defendants move to dismiss the amended complaint in the action initiated by C&L, No. 13 Civ. 2638 (LLS). In that action, C&L, K&C International Trading Inc ("K&C"), and Kam Ng sue ATHI, along with defendants Chung Kee (USA) International Inc., Yat Chau (USA) Inc., Tung Ren Tang, Ron Feng Trading Inc., Fargo Trading Inc., Yong Long Supermarket Inc., and Po Wing Hong Food Market Inc., which are stores that allegedly market and sell ATHI's infringing product.

### A.

The amended complaint alleges:

> 38. The Plaintiffs's medicinal herbal teas merchandized in packaging bearing the Plaintiffs's Marks have come to be well-known by the Chinese community as effective and high quality products effective in the treatment of allergies to pollen, skin allergies, colds, and pain in bones.
>
> 39. Over the years, large numbers of consumers have been exposed to the Plaintiffs's Marks through advertisement, in various magazines and newspapers, and on TV and the internet.
>
> 40. As a result, the Plaintiffs's Marks are recognized, famous and popular trademarks in the Chinese community, which adds value to the herbal teas merchandized in packaging bearing the Plaintiffs's Marks.

> 41. The Plaintiffs are owners of the entire right, title and interest in the trademarks, examples of which are contained in Exhibit 1, 2 and 3 of this Amended Complaint.[1]
>
> 42. The Plaintiffs's Marks are valid, registered under federal and New York State law, and enforceable.

Plaintiffs have two registered marks, one registered with the United States Patent and Trademark Office ("USPTO"), and one registered with New York State's Department of State. The USPTO mark is a logo described on its certificate as consisting of "the words 'Tibetan Baicao Tea', with the Chinese Characters of the same words traversing the English words vertically," Ng Aff. Ex. F (the "composite mark"). That mark is registered on the USPTO supplemental register, see 15 U.S.C. §§ 1091-1096. Plaintiffs' second mark, registered with New York State, is described as the words "Tibetan Baicao Tea" on its certificate (the "word mark"). See id. Ex. B.

The amended complaint alleges that "The Defendants, without authorization or license from the Plaintiffs, have willfully and intentionally used, reproduced, and/or copied the Plaintiff's

---

[1] Plaintiffs do not attach any exhibits to their Amended Complaint. However, in opposition to defendants' motion to dismiss the first complaint, plaintiffs submitted an affidavit sworn to by Ms. Ng (Dkt. No. 12), that attaches as exhibits B and F plaintiffs' New York State and United States Patent and Trademark Office trademark registration certificates, described below, respectively. The Court incorporates those certificates into the amended complaint by reference.

Marks in connection with their manufacturing, distributing, exporting, importing, advertising, marketing, selling and/or offering to sell their Counterfeit Products." Am. Compl. ¶ 54.

On that basis, plaintiffs plead trademark and trade dress infringement, counterfeiting, false designation of origin, and unfair competition under the Lanham Act, 15 U.S.C. § 1051 et seq.  Plaintiffs also plead trademark and trade dress infringement and counterfeiting, unfair competition, and deceptive acts and practices under New York state law.

### B.

Defendants contend that plaintiffs' marks are not entitled to protection under the Lanham Act.

Defendants argue that plaintiffs' word mark is not entitled to protection because "In actuality, the Word Mark is registered to ATHI on the Principal Register of the USPTO" and "ATHI owns the exclusive right to use the Word Mark in interstate commerce in connection with tea goods," Defs.' Br. 4, and references its certificates of registration with the USPTO as well as sworn statements by officers and employees of ATHI attesting to the validity of ATHI's competing marks.

ATHI's defense, if established, would resolve the dispute in favor of defendants.  Nonetheless, ATHI's prior, superior marks are not mentioned in, and are therefore extraneous to the

complaint at issue, and would be more appropriately dealt with in the context of a motion for summary judgment. Moreover, the amended complaint adequately alleges that ATHI abandoned its marks by alleging that:

> 69. To the degree that Defendant ATHI may have had rights in trademarks associated with the trade name Tibetan Baicoa [sic] Tea, Defendant ATHI expressly abandoned any and all rights it may have had in such trademark when it announced any and all rights it may have had in such trademarks when it announced in or about March 2011, in the Sing Tao Daily that it ceased to sell Tibetan Baicoa [sic] Tea in North America. A copy of this announcement with an English translation is incorporated and made part of this Amended Complaint as Exhibit 4.
>
> 70. To the degree that Defendant ATHI may have had rights in trademarks associated with the trade name Tibetan Baicoa [sic] Tea, Defendant ATHI expressly abandoned any and all rights it may have had in such trademarks when, on or about December 9, 2010, it registered a trademark for "Shengcao Tea" with the State Intellectual Property Office of the People's Republic of China. A copy of the certificate issued as a result of this registration with an English translation is incorporated and made part of this Amended Complaint as Exhibit 5.

See 15 U.S.C. § 1127 (providing that a mark shall be deemed abandoned "When its use has been discontinued with intent not to resume such use").

Although C&L's allegations of abandonment may ultimately fail to prevail, the facts are not yet sufficiently clear to decide that issue as a matter of law.

Defendants also argue that plaintiffs' composite mark is not entitled to protection under the Lanham Act because it is registered on the supplemental register of the USPTO, and not the primary register.

> Registration in the supplemental register which is reserved for nondistinctive marks, entitles the owner of a mark to institute actions based upon it in the federal courts, see 15 U.S.C.A. § 1121, and to obtain the remedies provided in the Lanham Act, 15 U.S.C.A. §§ 1114-1122. But registration cannot give validity to a mark, the use of which would be invalid at common law.

Feathercombs, Inc. v. Solo Products Corp., 306 F.2d 251, 257 (2d Cir. 1962). Accord Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc., 478 F. Supp. 2d 340, 347 (E.D.N.Y. 2007) ("While registration on the Supplemental Register is not evidence of ownership, validity, or the exclusive right to use, such registration enables the registrant, inter alia, to sue for infringement in federal court.").

Accordingly, plaintiffs may obtain the relief provided by the Lanham Act only if their marks are entitled to protection under common law – that is, if their marks are sufficiently distinctive to distinguish their goods from the goods of others,

see Star Indus., Inc. v. Bacardi & Co. Ltd., 412 F.3d 373, 381 (2d Cir. 2005). "Such distinctiveness may be demonstrated in either of two ways. The mark may be 'inherently distinctive' if its intrinsic nature serves to identify its particular source. Alternatively, even if not inherently distinctive, the mark may be distinctive by virtue of having acquired a 'secondary meaning' in the minds of consumers." Id. "A mark or trade name has acquired secondary meaning if a purchaser will associate it with a certain producer, and will be likely to make that same association when an identical mark (or a confusingly similar mark), is used on another producer's product. Yarmuth-Dion, Inc. v. D'ion Furs, Inc., 835 F.2d 990, 993 (2d Cir. 1987).

The amended complaint alleges that:

> 49.   Consumers are exposed to the Plaintiffs's Products and the Plaintiffs's Marks through magazines, newspapers, television, and the internet. As a result, the Plaintiffs's Marks have become widely known and valuable trademarks, possessing a strong secondary meaning among consumers.
>
> 50.   The Plaintiffs' Marks are valuable among consumer trademarks because they are constantly exposed to consumers. As a result, the Plaintiffs's Marks have come to symbolize the enormous goodwill of the Plaintiffs's business in the Chinese community. No other manufacturer lawfully uses the Plaintiffs's Marks or any other substantially similar marks for similar types of goods.

Those allegations sufficiently state that consumers associate plaintiffs' marks with plaintiffs' products, and thus that they are distinctive by having acquired secondary meaning. Accordingly, defendants' motion to dismiss on the ground that plaintiffs' marks are not protected under the Lanham Act is denied.

## C.

Defendants argue that each of plaintiffs' claims fails to state a plausible claim for relief.

### 1.

Count one of the amended complaint is for trademark and trade dress infringement under section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a). Counts three and four of the amended complaint are for false designation of origin and unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[2]

Section 32 allows the owner of a registered trademark to recover against defendants who "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in

---

[2] Count two of the amended complaint relates to a separate issue and is discussed below.

connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[.]" Section 43(a) "similarly prohibits the infringement of unregistered, common law trademarks." Time, Inc. v. Petersen Pub. Co. L.L.C., 173 F.3d 113, 117 (2d Cir. 1999). "[A] prima facie case is made out [under section 43(a)] by showing the use of one's trademark by another in a way that is likely to confuse consumers as to the source of the product." Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 871 (2d Cir. 1986).

As discussed above, plaintiffs sufficiently plead that their marks are valid and protectable under the Lanham Act. The amended complaint also alleges that:

> 54.   The Defendants, without authorization or license from the Plaintiffs, have willfully and intentionally used, reproduced, and/or copied the Plaintiff's Marks in connection with their manufacturing, distributing, exporting, importing, advertising, marketing, selling and/or offering to sell their Counterfeit Products.
>
> . . . .
>
> 74.   The Defendants's actions have caused and are likely to cause confusion and mistake and to deceive potential consumers and the general purchasing public as to the source, origin or sponsorship of their Counterfeit Products, and are likely to deceive the public into believing that the Counterfeit Products sold by the Defendants originate from, are associated with, or are otherwise authorized by the Plaintiffs, all

9

>     to the damage and detriment of Plaintiffs's
>     reputation, goodwill and sales.

Those allegations sufficiently plead that defendants used plaintiffs' marks in a manner likely to cause confusion among consumers, and thus the amended complaint adequately states claims under sections 32 and 43(a) of the Lanham Act.

Defendants' motion to dismiss counts one, three, and four of the amended complaint is denied.

## 2.

The Lanham Act defines a counterfeit mark as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark," 15 U.S.C.A. § 1127, that is "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered," see 15 U.S.C. § 1116(d)(1)(B)(i).

Plaintiffs' marks are not registered on the principal register of the USPTO. Accordingly, count two of the amended complaint, for counterfeiting under the Lanham Act, is dismissed.

3.

The requirements of plaintiffs' trademark infringement claim brought under New York state law, count five of the amended complaint, are interchangeable with the requirements of the Lanham Act: plaintiffs must plead the unauthorized use by defendants of plaintiffs' marks in a manner likely to cause consumer confusion. See N.Y. Gen. Bus. Law §§ 360-k.

The allegations in the amended complaint that adequately plead trademark infringement under the Lanham Act are sufficient to plead trademark infringement under New York law.

Defendants' motion to dismiss count five of the amended complaint is denied.

4.

Count six of the amended complaint is for unfair competition under New York common law.

"The essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 34-35 (2d Cir. 1995). "In a common law unfair competition claim under New York law, the plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable

11

relief. Additionally, there must be some showing of bad faith." Id.

As discussed above, the amended complaint adequately pleads that defendants used plaintiffs' marks in a manner likely to cause confusion. The amended complaint also alleges that "such actions were taken in bad faith, with full knowledge of the Plaintiffs's ownership of, and/or exclusive right to use and license the Plaintiffs's Marks," Am. Compl. ¶ 58.

Accordingly, the amended complaint states a valid claim for common law unfair competition. Defendants' motion to dismiss count six of the amended complaint is denied.

## 5.

Count seven of the amended complaint is for deceptive acts and practices brought under New York law.

Section 349 of New York's General Business Law prohibits "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a). "A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." Biosafe-One, Inc. v. Hawks, 639 F. Supp. 2d 358, 367 (S.D.N.Y. 2009) aff'd, 379 F. App'x 4 (2d

Cir. 2010), citing Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (2000).

Plaintiffs allege that defendants' use of plaintiffs' marks in sales to consumers was misleading, and also allege that "The Defendants' acts are causing and will continue to cause damage and irreparable harm to the Plaintiffs and to the Plaintiffs's Products reputation and goodwill with purchasers and consumers," Am. Compl. ¶ 68.

Thus, the amended complaint sufficiently pleads a claim under N.Y. Gen. Bus. Law § 349. Defendants' motion to dismiss count seven of the complaint is denied.

## Conclusion

Defendants' motion to dismiss the amended complaint (Dkt. No. 19) is granted with respect to count two of the amended complaint. It is denied with respect to all other counts.

So ordered.

Dated: New York, New York
       November 18, 2013

                                          _____
                                              LOUIS L. STANTON
                                                 U.S.D.J.