```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
C&L INTERNATIONAL TRADING INC., KAM NG,
and K&C INTERNATIONAL TRADING INC.

                    Plaintiffs,          13 Civ. 2638 (LLS)
                                         13 Civ. 2763 (LLS)
        - against -
                                             AMENDED
AMERICAN TIBETAN HEALTH INSTITUTE, INC.,  OPINION AND INJUNCTION
CHUNG KEE (USA) INTERNATIONAL INC., YAT
CHAU (USA) INC., TUNG REN TANG, RON FENG
TRADING INC., FARGO TRADING INC., YONG LONG
SUPERMARKET INC., and PO WING HONG FOOD
MARKET INC.,

                    Defendants.
-----------------------------------X
AMERICAN TIBETAN HEALTH INSTITUTE, INC.,

                    Plaintiff,

        - against -


KAM NG, C&L INTERNATIONAL TRADING, INC.,
KANG LI TRADING, INC., and K&C
INTERNATIONAL TRADING, INC.,

                    Defendants.
-----------------------------------X
```

The June 25, 2014, Order and Injunction (13 Civ. 2638 (LLS) Dkt. No. 61; 13 Civ. 2763 (LLS) Dkt. No. 84) is amended to read as follows:

American Tibetan Health Institute, Inc. ("ATHI") and Kam Ng both sell Chinese herbal medicinal tea called "Tibetan Baicao Tea," packaged in substantially similar boxes. These cases are cross-

1

suits: each side sues the other side for trademark infringement, among other claims, alleging its right to exclusive commercial use of the name "Tibetan Baicao Tea" and design marks found on the tea boxes.

The parties do not dispute that the tea boxes bearing the disputed marks are sold in commerce, and are sufficiently similar such that the sale of both is likely to cause confusion among consumers. The sole dispute is which party – ATHI or Kam Ng – has the right to use the disputed marks in commerce.

ATHI moved to preliminarily enjoin Kam Ng from selling Tibetan Baicao Tea. All parties agreeing that the only material issues in substantial dispute were which of them had first used its marks in commerce in the United States and (if it was ATHI) whether ATHI had thereafter abandoned the marks, the hearing on that motion was consolidated with a trial on the merits under Fed. R. Civ. P. 65(a)(2). A jury trial of those two issues was held from March 24 to 27, 2014. The jury determined that ATHI was the first to use its trademarks in commerce, and did not later abandon the marks.

For the reasons that follow, the injunction is granted.

### Discussion

As a remedy for unauthorized use in commerce of a trademark, where such use is likely to cause confusion, a court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the

2

violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a).

ATHI filed to register the disputed marks on the USPTO's principal register in March 2012, which is prima facie evidence of ATHI's ownership of the disputed marks and exclusive right to use them in commerce. See 15 U.S.C. § 1115(a).

Registration does not, however, give priority over persons who had used and not abandoned the disputed marks prior to the registration. See 15 U.S.C. § 1057(c)(1). ATHI's registration does "not preclude another person from proving any legal or equitable defense or defect, including those set forth in subsection (b) of this section, which might have been asserted if such mark had not been registered." 15 U.S.C. § 1115(a).

It is a defense to the charge of infringement:

> That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to (A) the date of constructive use of the mark established pursuant to section 1057(c) of this title, (B) the registration of the mark under this chapter if the application for registration is filed before the effective date of the Trademark Law Revision Act of 1988, or (C) publication of the registered mark under subsection (c) of section 1062 of this title: Provided, however, That this defense or defect shall apply only for the area in which such continuous prior use is proved;

15 U.S.C. § 1115(b)(5).

"Under this statutory scheme, defendants' rights to its mark extend only as far as the area where its continuous prior use of that mark preempted plaintiff's constructive use of its mark." Allard Enters., Inc. v. Advanced Programming Res., Inc., 146 F.3d 350, 361 (6th Cir. 1998).

Kam Ng claims that, notwithstanding ATHI's first sale in the United States, she sold her trademarked product in Chinatown in New York before ATHI registered the marks or sold its product there, and that she is therefore entitled to trademark protection of the disputed marks in New York.

Resolution of that dispute turns on which party used the disputed marks in commerce first in New York, and whether Kam Ng had knowledge of ATHI's prior use.

At trial, ATHI introduced a sales invoice dated May 4, 2009, showing its predecessor's sale of Tibetan Baicao Tea to a national distributor in San Francisco. ATHI Trial Ex. 4.

Shirley Lee, a founder and the president of ATHI, credibly testified at trial that, through that national distributor, ATHI's tea, bearing the disputed marks, was sold in New York, Los Angeles and San Francisco as early as May 4, 2009, and thereafter expanded to other places:

> Q. Mrs. Lee, can you tell us when's the very first time that the Tibetan baicao tea was sold?
>
> A. Year 2009, May 4th.

4

>           *       *       *       *
>
>   Q.  Can you describe where did you sell the
>       product to?
>
>   A.  New York, Los Angeles, San Francisco,
>       that's all.
>
>   Q.  This is for the beginning of time? You
>       have other places you continued selling
>       the product?
>
>   A.  Yes.

Lee Direct, Trial Tr. vol. 1, 51:21-23, 56:17-21, Mar. 24, 2014.

The 2009 sales comprised "Approximately 5,000 boxes." Id. at 52:5.

While Kam Ng testified at trial that she sold tea in New York using the name "Tibetan Baicao Tea" in December 2009 (Ng Direct, Trial Tr. vol. 3, 235:6-25, Mar. 26, 2014), she stated that she did not begin using the design marks on her tea packaging until November or December 2010:

>   Q.  Did those shipments from Mr. Ou contain
>       an image on it of a scroll and teacup?
>
>   A.  No.
>
>           *       *       *       *
>
>   Q.  When did you first start to sell Tibetan
>       baicao tea in a package containing the
>       scroll and teacup design that I just
>       showed you, that you had received from
>       Mr. Ou?
>
>   A.  It was by the end of 2010, between either
>       November or December.

Id. at 238:24-239:1, 241:5-9.

Ms. Ng testified that as early as March 2009, she sold tea she received from a Tibetan medical student, but not that those sales made use of any packaging bearing the disputed marks:

> Q. When did you first come in contact with Baicao Tea?
>
> A. I believe it was on March 1st, 2009.
>
> \* \* \* \*
>
> Q. Who brought it to your attention?
>
> A. One student who was learning Tibetan medicine.
>
> \* \* \* \*
>
> Q. And what information did you get about Tibetan Baicao Tea?
>
> A. I only got the tea bags without the box.
>
> \* \* \* \*
>
> Q. I'm referring to the date that you say you first started selling the Tibetan Baicao Tea that you received from Mr. Ou.
>
> A. I sold Mr. Ou's tea in December 2009, but on March 1st of 2009 I sold the tea that the student who learned Tibetan medicine gave me.

Id. at 222:2-3, 222:10-11, 222:22-23, 236:15-20

Ms. Ng produced no documentary evidence of those sales.

Ms. Ng introduced invoices from a distributor in China, dated August 18, 2010 and September 7, 2010, that she testified were for

her purchase of Tibetan Baicao Tea, although the invoices did not identify Tibetan Baicao Tea as the purchased item, but rather described the contents of the shipment to Ms. Ng as "seafood dry cargo." See Kam Ng Trial Ex. H, I; Ng Direct, Trial Tr. vol. 3, 229:2-235:6, March 26, 2014. She also introduced her application to the New York State Department of State for trademark protection for the disputed marks. That application stated that her first use of the marks in commerce was March 2010. See Kam Ng Trial Ex. J; Ng Direct, Trial Tr. vol. 3, 250:6-251:22, March 26, 2014.

Upon my appraisal of the documentary evidence as a whole, and the credible and germane testimony, the conclusion is inevitable that ATHI began selling its tea, bearing the disputed marks, in New York City in May 2009, before Kam Ng began selling her produce bearing such marks there.

Kam Ng protests that she was not aware of ATHI's sales in New York. But I take judicial notice that New York's Chinatown is a small market, and I find that Kam Ng's offer and sale of her product "in a green box that was substantially similar" to ATHI's predecessor's box (Kam Ng's April 21, 2014 Br. 2), seven months after ATHI's entry into that market was the result, not of coincidence, but of copying. Furthermore, Ms. Ng has no common law right to the disputed marks because ATHI's predecessor used the disputed marks in New York first.

7

Accordingly, Kam Ng's innocent prior user defense is rejected on the merits.

The motion for an injunction (13 Civ. 2763 (LLS) Dkt. No. 45) is therefore granted, as follows.

### Injunction

Having reviewed the papers before it, and being fully advised, the Court permanently restrains and enjoins Kam Ng, C&L International Trading, Inc., Kang Li Trading, Inc., and K&C International Trading, Inc. ("Defendants"), each of them, and their agents, servants, employees, attorneys, and all others in active concert or participation with Defendants, from:

1. Making any statement or representation whatsoever which claims ownership of or disparages ATHI's product branding or packaging by referring to it as "old," "former," or equivalent;

2. Using the registered trademark TIBETAN BAICAO TEA or its Chinese equivalent;

3. Using TIBETAN BAICAO TEA, or any reproduction, counterfeit, copy, or colorable imitation of the TIBETAN BAICAO TEA mark in connection with the distribution, advertising, marketing, offer for sale, and/or sale of goods not the genuine products of ATHI in, from, or to the United States;

4. Passing off, inducing or enabling others to sell or pass off any goods falsely bearing the TIBETAN BAICAO TEA mark in, from, or to the United States;

5. Shipping, delivering, holding for sale, distributing, returning, transferring, or otherwise moving, storing, or disposing of in any manner goods falsely bearing the TIBETAN BAICAO TEA mark, in, from, or to the United States;

6. Using American Tibetan Health Institute, Inc.'s Tibetan Baicao Tea packaging trade dress, including any other confusingly similar green color, on the packaging of their goods;

7. Selling or offering to sell, manufacturing, supplying, distributing, making, or importing into the United States any product named, marked or labelled or otherwise identified as "Tibetan Baicao Tea" in English or any foreign equivalent;

8. Selling or offering to sell, manufacturing, supplying, distributing, making, or importing into the United States any product bearing the TIBETAN BAICAO TEA mark;

9. Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which may or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, imported, distributed, or sold by Defendants are in any manner associated or connected with American Tibetan Health Institute, Inc., or are sold, manufactured, licensed, sponsored, approved or authorized by ATHI.

This Order in no way limits ATHI's right to bring an application for Seizure Order on an <u>ex parte</u> basis, in accordance

with 15 U.S.C. § 1116(d), upon the discovery of any further use of ATHI marks by the Defendants, agents, servants, employees, attorneys, or others in active concert or participation with them.

So ordered.

DATED:   New York, New York
         December 3, 2014

                                    _____
                                    LOUIS L. STANTON
                                    U. S. D. J.