USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/22/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**C&L INTERNATIONAL TRADING INC., KAM NG, and K&C INTERNATIONAL TRADING INC,**

Plaintiffs,

- against -

**AMERICAN TIBETAN HEALTH INSTITUTE, INC., CHUNG KEE (USA) INTERNATIONAL INC., YAT CHAU (USA) INC., TUNG REN TANG, RON FENG TRADING INC., FARGO TRADING INC., YONG LONG SUPERMARKET INC., and PO WING HONG FOOD MARKET INC.,**

Defendants.

**AMERICAN TIBETAN HEALTH INSTITUTE, INC.,**

Plaintiff,

- against -

**KAM NG, C&L INTERNATIONAL TRADING, INC., KANG LI TRADING, INC., and K&C INTERNATIONAL TRADING, INC.,**

Defendants.

13 Civ. 2638 (LLS)
13 Civ. 2763 (LLS)

**OPINION & ORDER**

After a jury verdict against it in these cross-suits making reciprocal claims of trademark infringement, C&L International Trading, Inc. ("C&L") now moves for summary judgment denying all the successful American Tibetan Health Institute, Inc.'s ("ATHI") claims for damages. For the reasons that follow, the motion is denied.

**BACKGROUND**

This consolidated action concerns who has the right to sell medicinal herbal tea under the trademark TIBETAN BAICAO TEA: ATHI and its New York City retailers or Kam Ng, Kang Li Trading, Inc. ("Kang Li"), K&C International Trading, Inc. ("K&C") (two corporations controlled by Ms. Ng), and Ms. Ng's distributor, C&L (together "defendants").

**Procedural History**

In April 2013, Ms. Ng and C&L sued seven New York City retailers of ATHI's Tibetan Baicao Tea, claiming they were infringing her exclusive rights to the TIBETAN BAICAO TEA trademark. Three days later, ATHI sued Ms. Ng, the Ng companies, and C&L claiming that it was ATHI that owned the mark. The two cases were consolidated, and Ms. Ng and C&L amended their complaint to add claims against ATHI.

ATHI moved for a preliminary injunction against defendants' use of the mark. The parties agreed that their products, packaging, and trademarks were virtually identical and that the only material issues in substantial dispute were which of them had first used the mark in commerce in the United States and, if it was ATHI, whether ATHI had thereafter abandoned the marks. Accordingly, the trial of the merits was advanced on consent and consolidated with the preliminary injunction hearing. See Fed. R. Civ. P. 65(a)(2). A jury trial of the two stipulated issues

was held from March 24 to 27, 2014. The jury determined that ATHI was the first to use its trademarks in commerce and that it did not later abandon the marks.

Consistent with all parties' understanding, I issued an order to show cause (Dkt. No. 65[1]) "why the Court should not enter an order granting a permanent injunction and judgment on the merits in favor of ATHI, and respectfully referring the case . . . to Magistrate Judge Gabriel W. Gorenstein to hold an inquest, hear and determine the amount of damages to be recovered by ATHI." In response, no party raised any issues or questions of the propriety of that relief except for Ms. Ng's claim she was an innocent prior user with common law rights to the mark in the New York market, which I rejected in an opinion and injunction dated June 25, 2014 (Dkt. No. 84), later amended on December 3, 2014 (Dkt. No. 118).

After the issuance of the injunction, defendants discharged their original trial counsel. Appearing through new counsel, C&L now claims that it did not consent to be named a plaintiff in this litigation, was unaware that it had been sued by ATHI, and in any event cannot be liable for any damages incurred by Ms. Ng and her controlled companies.

[1] All docket numbers refer to the docket for case No. 13 Civ. 2763 (LLS).

**C&L's Relationship with Ms. Ng and its Original Counsel**

C&L is a New York corporation organized in June 2011. ATHI's Rule 56.1 Statement of Disputed and Undisputed Material Facts ("ATHI SOF") ¶ 1, Mar. 30, 2015, Dkt. No. 163. It is now solely owned by Sammy Chow who is listed as C&L's Chief Executive Officer by the New York Secretary of State. See id. ¶ 3. C&L is a distributor who helps place goods in Chinatown grocers. Id. ¶ 2.

C&L's precise relationship with Ms. Ng is disputed. Id. On a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party (ATHI) and draws all reasonable inferences in its favor. Lindsay v. Ass'n of Prof'l Flight Attendants, 581 F.3d 47, 50 (2d Cir. 2009). Under that standard, having reviewed the evidence submitted in support of and opposition to the motion, I accept for its purposes ATHI's summary of the record:

> C&L's relationship with Ms. Kam Ng and her companies started around August 2011, when C&L began renting space from K&C's retail store location at 84 Hester Street, New York, NY. (Deposition Transcript of Sammy Chow attached as Exhibit A to the Declaration of Otto Lee filed herewith ("Chow Depo. Tr."), 43:5-14, 49:17-25, 53:20-25.) Shortly thereafter, Sammy Chow, Manager of C&L, authorized Kam Ng to use C&L's name in promoting her business. (Chow Depo. Tr. 12:9-11, 45:18-47:16.) . . . In early March 2012, C&L began a relationship with Kam Ng selling K&C's tea product under the mark "Tibetan Baicao Tea." (Chow Depo. Tr., 54:18-25.) Kam Ng's business card presented

> name, "C&L Int'l Trading Inc." and "Kang Li Trading Inc." (Chow Depo. Tr., 44:16-45:25; Chow Depo. Tr. Exh. 2.) Defendants' joint representations continued online, where C&L was listed on the "Contact Us" page of the website www.us-tt.net, along with Kam Ng's address, her email address, and a phone number routed to Kam Ng's cell phone. (Deposition Transcript of Kam Ng dated Mar. 21, 2014 attached as Exhibit D to the Declaration of Otto Lee filed herewith ("Ng Depo. Tr., Mar. 21, 2014"), 12:2-15:25, Ng Depo., Mar. 21, 2014, Exh. 15.) TIBETAN BAICAO TEA products were prominently displayed on C&L's said website. (Ng Dep., Mar. 21, 2014, Exh. 15.) With things coming full circle, Kam Ng is "renting an office desk now" from C&L in a shared space at the 6221 20th Avenue, New York, NY retail store location. (Chow Depo Tr., 47:22-24.)

ATHI Opp'n Mem. 1-2, Mar. 30, 2015, Dkt. No. 162.

Mr. Chow was introduced to C&L's original counsel, Giuttari & Mertz Law Office, P.C., by Ms. Ng. ATHI SOF ¶ 20. The firm had previously registered trademarks for Ms. Ng, and Mr. Chow engaged the firm to register trademarks on his behalf as well, id. ¶ 21-22, including one application filed three days before Ms. Ng and C&L sued ATHI's retailers, see Wong Decl. Ex I, at 2, Mar. 15, 2015, Dkt. No. 150.

On March 15 2013, a cease and desist letter was sent to New York City merchants claiming that Ms. Ng's company Kang Li owned exclusive rights to the TIBETAN BIACAO TEA mark and threatening legal action for its unauthorized use. Wong Decl. Ex. D. The letter's heading listed Giuttari & Mertz, C&L, and Kang Li. It was signed by Ms. Ng as CEO of Kang Li and two attorneys. The letter was republished as an advertisement for Kang Li's Tibetan

Baicao Tea in the Sing Tao Daily newspaper for several days in late March 2013. Chow Dep. Final Tr. 85:5-16, Nov. 20. 2014, filed as Lee Decl. Ex. A, Mar. 30, 2015, Dkt. No. 164; Lee Decl. at ATHI Trial Ex. 17 ¶ 3.

Mr. Chow claims he first saw the letter in the Sing Tao Daily, but that K&C gave him a Chinese language version of the letter, which was also sent to local merchants. Chow Dep. Draft Tr. 86:4-6, 89:3-8, Nov. 20, 2014, filed as Wong Decl. Ex. A. He states the letter was sent without his knowledge, and he spoke to both Ms. Ng and a Giuttari & Mertz attorney, but neither would explain the letter to him. Id. at 89:9-18, 91:3-10.

By an arrangement with Ms. Ng, Giuttari & Mertz then represented C&L is this matter, and Ms. Ng coordinated with them on C&L's behalf. Ng Dep. 7:5-8:13, March 21, 2014, filed as Lee Decl. Ex. D.

**Defendants' Knowledge of ATHI's Rights and Registration**

The record shows that "Mr. Chow first saw ATHI's TIBETAN BAICAO TEA less than a month after he began selling Ms. Ng's product." C&L's Resp. to New Facts Introduced in ATHI SOF ¶ 43, Apr. 6, 2015, Dkt. No. 171. As summarized by ATHI,

> Sammy Chow has testified for C&L that he first saw ATHI's TIBETAN BAICAO TEA less than a month after he began selling Kam Ng's product, in March 2012. (Chow Depo. Tr., 54:18-25; 57:2-58:1; 61:13-62:8.) Around the end of March 2012, a representative from ATHI's distributor Wah Bo informed C&L that C&L was not authorized to sell Kam Ng's "Tibetan Baicao Tea"

> product. (Chow Depo. Tr. 62:9-14.) During this time, ATHI published a notice in the Sing Tao Daily newspaper advertising the sale of its TIBETAN BAICAO TEA product. (ATHI Trial Exh. 43; Trial Tr., 87:7-15.) Sammy Chow testified that he first heard of ATHI and its TIBETAN BAICAO TEA products from a notice in the Sing Tao Daily. (Chow Depo. Tr., 84:7-9.) When asked further about the first time he saw ATHI's TIBETAN BAICAO TEA product, Sammy Chow responded, "I felt this was very strange because the name was very similar . . ." (Chow Depo. Tr., 57:5-6.)

ATHI Opp'n Mem. 3-4 (ellipsis in original).

The cease and desist letter erroneously claimed ownership of ATHI's United States trademark application for the TIBETAN BIACAO TEA mark, referring to it by serial number. Wong Decl. Exs. D, J. After ATHI filed suit, the parties stipulated that Kang Li, C&L, and Giuttari & Mertz would publish a retraction letter signed by Ms. Ng and the two attorneys stating that ATHI owned that trademark application. Stipulated Order for Temporary Relief, May 13, 2013, Dkt. No. 23.

Finally, on May 17, 2013, ten days after registering the TIBETAN BAICAO TEA mark, ATHI filed an amended complaint (Dkt. No. 27), which added claims for infringement of its registered trademark. A copy of the certificate of registration for the mark was attached to the amended complaint, and it was served on Giuttari & Mertz.

## DISCUSSION

### Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." Lindsay v. Ass'n of Prof'l Flight Attendants, 581 F.3d 47, 50 (2d Cir. 2009).

### Limitations on Monetary Remedies for Trademark Infringement

Once liability for trademark infringement is established, "the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a) (emphasis added).

Section 1114(1) defines the elements of infringement of a registered trademark:

> Any person who shall, without the consent of the registrant--
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with

> which such use is likely to cause confusion, or to cause mistake, or to deceive; . . .
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

Section 1114(2) then limits the available remedies in cases of innocent infringement by printers and publishers, limitations that are not at issue in this action.

C&L advances three primary arguments that it is protected by § 1117's limitations. First, it reads an "affixation" requirement into § 1114 and argues that, as a mere distributor of the infringing goods, it is not liable for monetary remedies because it did not affix ATHI's mark to the goods or their packaging. Second, an award of damages would be inconsistent with equitable principles. Third, ATHI did not comply with § 1111's notice requirements so it cannot recover damages or profits. Ultimately, none of those arguments entitle C&L to summary judgment.

Affixation

C&L argues that § 1114(1)(a) does not simply define trademark infringement but that, by using the phrase "use in commerce," it creates an independent limitation on remedies. Relying on 15 U.S.C. § 1127's definition of "use in commerce," it argues that it did not use ATHI's mark in commerce because it did not itself affix the mark to the goods. That section states:

> For purposes of this chapter, a mark shall be deemed to be in use in commerce--

(1) on goods when--
(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
(B) the goods are sold or transported in commerce . . . .

Use in commerce is an element of liability. Rescuecom Corp. v. Google Inc., 562 F.3d 123, 127 (2d Cir. 2009) ("[A] complaint fails to state a claim under the Lanham Act unless it alleges that the defendant has made 'use in commerce' of the plaintiff's trademark . . . ."); Estee Lauder Inc. v. The Gap, Inc., 108 F.3d 1503, 1508 (2d Cir. 1997) ("In order to prevail on a claim of trademark infringement in violation of the Lanham Act, a plaintiff must show (1) that it has a valid mark that is entitled to protection under the Act, and (2) that use of the defendant's mark infringes, or is likely to infringe, the mark of the plaintiff."); Born to Rock Design Inc. v. CafePress.com, Inc., No. 10 Civ. 8588 (CM), 2012 WL 3954518, at *5, 104 U.S.P.Q.2d 1538 (S.D.N.Y. Sept. 7, 2012) ("'Use in commerce' is a defined element of section 1114 and 1125 claims.").

There is no affixation requirement as C&L describes it. "It is no defense that a distributor did not actually affix the infringing mark to the goods, since actual sale of the goods with an infringing mark is itself infringement." 4 McCarthy on

Trademarks and Unfair Competition § 25.27 (4th ed. 2105); accord El Greco Leather Prods. Co. v. Shoe World, Inc., 806 F.2d 392, 396 (2d Cir. 1986) ("Even though Shoe World was involved neither in the manufacture nor the affixing of the CANDIE'S trademark to the shoes, its sale of the shoes was sufficient 'use' for it to be liable for the results of such infringement and its claimed lack of knowledge of its supplier's infringement, even if true, provides no defense."); GMA Accessories, Inc. v. BOP, LLC, 765 F. Supp. 2d 457, 463 (S.D.N.Y. 2011) ("However, even if Electric Wonderland did not manufacture or label the goods, it is well settled that a retailer's direct sale of an infringing product is sufficient to create liability."), aff'd sub nom. GMA Accessories, Inc. v. Elec. Wonderland, Inc., 558 F. App'x 116 (2d Cir. 2014). This is true for both liability and monetary remedies. Aris Isotoner Inc. v. Dong Jin Trading Co., No. 87 Civ. 890 (RO), 1989 WL 236526, at *5, 17 U.S.P.Q.2d 1017 (S.D.N.Y. Sept. 22, 1989) ("Thus it can be concluded that although Dong Jin did not itself manufacture the infringing gloves, it sold them with knowledge that they were intended to look like Isotoner gloves and it intended to reap the benefit of that similarity. . . . An accounting for profits is therefore appropriate.").

Equitable Limitations on Awarding Profits

C&L argues that "[e]quity bars recovery of any profits in

this case" because "the record shows no facts that satisfy any of the Second Circuit's criteria for a monetary award." C&L Supp. Mem. 2, 8, Mar. 15, 2015, Dkt. No. 151.

Under the Second Circuit's interpretation of § 1117(a), "a plaintiff must prove that an infringer acted with willful deception before the infringer's profits are recoverable by way of an accounting." George Basch Co. v. Blue Coral, Inc., 968 F.2d 1532, 1540 (2d Cir. 1992). "[S]o long as willfulness is established, an accounting of profits may be based upon 1) unjust enrichment, 2) damages, or 3) deterrence of a willful infringer." Banff, Ltd. v. Colberts, Inc., 996 F.2d 33, 35 (2d Cir. 1993) (citing George Basch Co., 968 F.2d at 1538).

A finding of willfulness is necessary in order to award profits, but it may not be sufficient:

> While under certain circumstances, the egregiousness of the fraud may, of its own, justify an accounting, see W.E. Bassett Co., 435 F.2d [656, 664 (2d Cir. 1970)], generally, there are other factors to be considered. Among these are such familiar concerns as: (1) the degree of certainty that the defendant benefited from the unlawful conduct; (2) availability and adequacy of other remedies; (3) the role of a particular defendant in effectuating the infringement; (4) plaintiff's laches; and (5) plaintiff's unclean hands.

George Basch Co., 968 F.2d at 1540. The weighing of those factors is left to the discretion of the district court according to the circumstances of the case. Id. at 1540-41

(quoting 15 U.S.C. § 1117(a)).

In this case, there is a genuine question of whether C&L acted in bad faith. Based on the circumstances described above, a reasonable jury could find that Mr. Chow knew or should have known of the infringing nature of C&L's distribution of the product as marked. A reasonable jury could find that Ms. Ng was acting as an agent of C&L, that she knew or should have known of the infringing nature of C&L's distribution, and that her knowledge should be imputed to C&L.

The other equitable considerations mentioned in George Basch Co., as usual, involve factual determinations inappropriate for summary judgement.

Section 1111's Notice Requirement

Finally, C&L argues that ATHI cannot recover damages or profits for infringement of ATHI's registered mark because ATHI did not give notice of its registration and C&L did not have actual notice of the registration.[2]

---

[2] C&L also argues that ATHI is not entitled to monetary recovery under 15 U.S.C. § 1114 for infringement prior to ATHI's registration of the TIBETAN BAICAO TEA mark. ATHI does not seek to recover under § 1114 for infringement prior to its date of registration, but under 15 U.S.C. § 1125(a) which protects unregistered marks. See GTFM, Inc. v. Solid Clothing, Inc., 215 F. Supp. 2d 273, 306 (S.D.N.Y. 2002) ("For any infringement occurring before December 26, 2000, the registration date of the '05' mark, GTFM may recover profits and damages under the provisions of Section 35 of the Act [15 U.S.C. § 1125] which apply to unregistered marks.") (citing 15 U.S.C. § 1117(a)).

15 U.S.C. § 1111 states:

> [An owner of a registered mark] may give notice that his mark is registered by displaying with the mark the words "Registered in U.S. Patent and Trademark Office" or "Reg. U.S. Pat. & Tm. Off." or the letter R enclosed within a circle, thus ®; and in any suit for infringement under this chapter by such a registrant failing to give such notice of registration, no profits and no damages shall be recovered under the provisions of this chapter unless the defendant had actual notice of the registration.

While there is no dispute that ATHI did not display the notice described by § 1111, there exists a genuine issue of fact whether C&L had actual notice of ATHI's registration.

ATHI registered the TIBETAN BAICAO TEA mark with the U.S. Patent and Trademark Office on May 7, 2013. On May 17, 2013, ATHI filed its first amended complaint, which added claims for infringement of its registered mark. A copy of the certificate of registration for the TIBETAN BAICAO TEA mark was attached to the amended complaint as an exhibit and served on Giuttari & Mertz, C&L's original counsel.

Accordingly, a jury will decide whether C&L had actual notice of the registration.

**CONCLUSION**

C&L's motion for summary judgment on the issue of damages (Dkt. No. 148[3]) is denied.

---

[3] Dkt. No. 114 in case No. 13 Civ. 2638 (LLS).

So ordered.

Dated: New York, New York
April 22, 2015

Louis L. Stanton
LOUIS L. STANTON
U.S.D.J.

Copies by mail to:

Kam Ng
6221 20th Avenue
Brooklyn, NY 11204

Kang Li Trading, Inc.
6221 20th Avenue
Brooklyn, NY 11204

K&C International Trading, Inc.
6221 20th Avenue
Brooklyn, NY 11204